UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JASON E.T. CATO,

                               Plaintiff,

    - v -                                                9:20-CV-176
                                                               (MAD/DJS)
GABRIEL FELIZ[1],

                               Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

JASON E.T. CATO
Plaintiff, *Pro Se*
21-B-0271
P.O. Box 3600
Marcy Correctional Facility
Marcy, New York 13403

HON. LETITIA JAMES                    LAUREN R. EVERSLEY, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

# REPORT-RECOMMENDATION AND ORDER

      Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was an inpatient in the Central New York Psychiatric Center ("CNYPC"). Dkt. No. 1, Compl. Plaintiff subsequently made a

---

[1] The clerk is directed to correct the spelling of the Defendant's name on the docket.

motion to amend his complaint, which was granted in part and denied in part by this Court. Dkt. Nos. 16 & 20. His Amended Complaint was filed on October 26, 2020. Dkt. No. 21, Pl.'s Am. Compl. Following the initial review pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A the only claims that remain in this action are: (1) a Fourteenth Amendment claim for unwarranted medical treatment; (2) a First Amendment retaliation claim; and (3) state law claims, all asserted against Defendant Feliz. Dkt. Nos. 6 & 21.[2]

Presently before this Court is Defendant's Motion for Summary Judgment. Dkt. No. 31. Defendants seek summary judgment on the merits of Plaintiff's claims. Dkt. No. 31-1, Defs.' Mem of Law. Plaintiff opposes the Motion. Dkt. No. 40, Pl.'s Opp. For the reasons that follow, the Court recommends that the Motion be granted as to Plaintiff's constitutional claims and that his state law claims be dismissed.

## I. FACTUAL BACKGROUND

Plaintiff's claims arise out of a series of incidents that took place while he was housed at CNYPC in 2020. Pl.'s Am. Compl. Plaintiff alleges that during his time at CNYPC, he was administered medication against his will. *Id.* He also alleges that he was subjected to retaliation. *Id.* As a result of those incidents, Plaintiff initiated this lawsuit against Defendant Gabriel Feliz, a Security Hospital Treatment Aide at CNYPC (hereinafter, "SHTA" or "treatment aide").

Treatment aides at CNYPC are responsible for assisting in the care of individuals diagnosed with mental illness or with emotional or social behavior problems. Dkt. No.

---

[2] Defendants McCulloch and Fontana were dismissed from the suit.

32, Declaration of Gabriel Feliz ("Feliz Decl.") at ¶ 6. Defendant Feliz's job responsibilities as an aide are focused on maintaining the safety and security of patients within the facility. *Id.* He does not have the authority to make medical treatment decisions for a patient, nor the authority to order or administer medication. *Id.* at ¶ 5; Dkt. No. 32-1, Declaration of Dina Keator ("Keator Decl.") at ¶ 5; Dkt. No. 32-2, Declaration of Kathleen Zielinski ("Zielinski Decl.") at ¶ 12.

### A. January 4, 2020 Incident

The first incident in question took place on January 4, 2020, when Plaintiff became agitated after being informed that he would be receiving a roommate. Feliz Decl. at ¶ 7. At that time, Plaintiff was the only individual on the unit without a roommate, and a new patient was being transferred to the ward. *Id.* Plaintiff became upset, stating that he did not want a roommate and asserting that he had a right to his own room. *Id.* Defendant Feliz contacted his supervisor, non-party Senior SHTA Randy Brown, for assistance in addressing Plaintiff's concerns. *Id.* Plaintiff, Brown, and Feliz reached an agreement regarding the roommate, and around 9:30 PM Plaintiff returned to his room. *Id.* at ¶¶ 7-8.

However, just five minutes after Plaintiff returned to the shared room, Plaintiff's new roommate exited and indicated that he had been punched. Keator Decl. at ¶ 8; Feliz Decl. at ¶¶ 7-9. Defendant Feliz brought Plaintiff to a side room as he suspected, based on Plaintiff's earlier threats, that Plaintiff may have injured his roommate. Feliz Decl. at ¶ 10. The side room, also referred to as the quiet room, is generally used by CNYPC facility

staff to have private discussions with patients and to attempt de-escalation of behaviors. Feliz Decl. at ¶ 24; Keator Decl. at ¶ 9. A red dot alarm was initiated due to the apparent patient injury, and doctors and staff reported to the ward. Feliz Decl. at ¶ 11. A red dot alarm at the CNYPC facility alerts staff members that an incident has occurred on a particular unit. Feliz Decl. at ¶ 11. When the alarm is triggered, all doctors and staff are to respond to the area to assist. *Id.* Defendant Feliz, along with other staff members, was present outside of the side room where Plaintiff was located. Feliz Decl. at ¶ 11. Plaintiff was observed to be in an agitated state and threatening staff members. Keator Decl. at ¶ 10. He was speaking in an abnormally loud voice, with increased psychomotor activity, and had exhibited a sudden change in mood. Keator Decl. at ¶ 10.

Although other redirection efforts and attempts to deescalate were made, non-party Dr. Maghsoudalou eventually directed that Plaintiff be given medication due to the risk he posed to himself and others. Keator Decl. at ¶ 11; Feliz Decl. at ¶ 12. 14 N.Y.C.R.R. § 527.8(c) permits facility psychiatrists to use their professional judgment to prescribe and administer medications to patients over their objections in emergency situations where the patient poses a danger to themselves or others. Keator Decl. at ¶¶ 13-14. Plaintiff was first offered the option of taking the medication by mouth, but after he refused, medication was administered via injection. Keator Decl. at ¶15; Feliz Decl. at ¶¶ 12-13. Record evidence submitted by both Plaintiff and Defendant demonstrates that Defendant Feliz did not order or administer the medication that was given to Plaintiff during this incident. Feliz Decl. at ¶ 14; Pl. Ex. B.; Keator Decl. Ex. A.

4

A "Patient Progress Note" entered by Nurse Dina Keator indicates that behavior management interventions for Plaintiff were ordered by Dr. Maghsoudalou, beginning with the use of seclusion and other less restrictive techniques, and ending with the administration of medication. Keator Decl. Ex. A. The medical record form entitled "Physician's Orders" shows that on January 4, 2020 the medication given to Plaintiff was ordered by Dr. Maghsoudalou. Keator Decl. Ex. B. Nurse Keator stated that Dr. Maghsoudalou was the individual who administered these medications to Plaintiff by injection on this date. Keator Decl. at ¶ 15.

### B. March 11, 2020 Incident

On March 11, 2020, the record reflects that Plaintiff again became agitated and disruptive after receiving a violation for passing food in the dining hall. Feliz Decl. at ¶ 16. Plaintiff continued to get more upset and disruptive after returning to the day room, and "aggressively stepped closer" to Defendant Feliz and another staff member. *Id.* He refused to back up when redirected. *Id.* Defendant Feliz and other staff directed Plaintiff again and initiated a red dot alarm. Zielinski Decl. at ¶ 8; Feliz Decl. at ¶ 16. Plaintiff entered the side room voluntarily, where he was evaluated by non-party Dr. Palumbo. Zielinski Decl. at ¶ 8.

Dr. Palumbo was the individual responsible for ordering medication for Plaintiff on this date. Zielinski Decl. Ex. A. Patient Progress Notes indicate that Plaintiff accepted and voluntarily took these medications by mouth. Zielinski Decl. at ¶¶ 8-11, Ex. A; Feliz

5

Decl. at ¶¶ 16-17.  Nurse Zielinski once again noted that as a SHTA, Defendant Feliz is unable to order or administer medications at all.  Zielinski Decl. at ¶ 12.

### C.  April 18, 2020 Incident

On April 18, 2020, Defendant Feliz asked Plaintiff to accompany him to the side room to discuss receiving a roommate.  Feliz Decl. at ¶ 18.  Plaintiff became agitated and made threatening remarks, leading staff to believe that he would attempt to hurt his potential roommate.  *Id.*  Plaintiff was offered medication but declined.  *Id.*  After speaking with a senior staff member, Plaintiff calmed down and returned to the day room.  *Id.*  He was not administered medication on this date.  *Id.* at ¶ 19 & Ex. A.

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant.  FED. R. CIV. P. 56(c); *see also Scott v.*

*Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a

7

rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Rule 56.1 Statement

The Local Rules for the Northern District of New York require any motion for summary judgment to contain a Statement of Material Facts. L.R. 7.1(b)(3). This rule further states that any opposition to a motion for summary judgment shall contain a response to the Statement of Material Facts which mirrors the moving party's statements and admits or denies the movant's assertions with a citation to the record. L.R. 56.1(b).

As Defendant notes, Plaintiff's Statement of Material Facts fails to comply with these requirements. "However, a district court has broad discretion to overlook a pro se litigant's failure to fully comply with local rules." *Klein v. Fischer*, 2015 WL 5174031 at *11 (N.D.N.Y. Sept. 2, 2015) (*citing Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). Given this broad discretion, the Court will overlook most of the procedural defects of Plaintiff's opposition and instead address the merits of Plaintiff's claims. Nonetheless, to the extent that Plaintiff has failed to specifically respond to the properly supported facts set forth in Defendant's papers with any of his own admissible evidence, those facts will be deemed admitted.

### III. DISCUSSION

### A. Unwanted Medical Treatment Claim

Defendant Feliz seeks summary judgment on the ground that he was not personally involved in the decision to administer medication to the Plaintiff, or in the actual

administration of that medication. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F. 2d 880, 885 (2d Cir. 1991).

The record establishes that the decision to administer medication to a patient is a medical decision that cannot be made by a treatment aide at CNYPC. Feliz Decl. at ¶ 5; Keator Decl. at ¶ 5; Zielinski Decl. at ¶ 12. Moreover, the evidence relied upon by both parties establishes that on January 4, 2020, the only date when Plaintiff was administered medication against his will, Defendant Feliz neither ordered nor administered the medication at issue. Plaintiff himself stated:

> Well, Mr. Felice [sic] is a T.A. The physician and the doctor is the ones that administered the injections on camera. And the other five T.A.s stood around – stood around the restraint bed that I laid upon and they watched the doctor inject three needles in my left – left buttock…

Dkt. No. 31-3, Plaintiff's Deposition ("Pl.'s Dep.") at pp. 30-31.

As a result, the record here clearly demonstrates that Defendant Feliz did not have the authority to order or administer medication to the Plaintiff or to any other patients and, in fact, he did not do so here. Therefore, his personal involvement in any decision to administer medication against Plaintiff's will has not been established. *See Emerson v. New York State Dep't of Corr. Svcs.,* 2011 U.S. Dist. LEXIS 116377 at *38 (N.D.N.Y. Sept. 9, 2011) (claims against defendant nurse subject to dismissal because she lacked the authority to override the medical decision of the treating physician); *accord Cuoco v.*

9

*Moritsugo*, 222 F. 3d. 99, 111 (2d Cir. 2000) (summary judgment was appropriate where non-medical professionals could not be held liable for failure to intervene in the medical decisions of a treating physician); *Smith v. Woods*, 2008 WL 788573 at *9 (N.D.N.Y. Mar. 20, 2008) (medical indifference claims against licensed clinical social worker and psychologist failed as a matter of law because neither had any authority to override prescribing physician's decisions).

Summary judgment is appropriate on this claim.

### B.  Retaliation Claim

In order to prevail on a First Amendment retaliation claim, a plaintiff must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech [or conduct] and the adverse action." *Holland v. Goord*, 758 F. 3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). "Adverse action" for purposes of a retaliation claim has been defined as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising … constitutional rights." *Klein v. Fischer*, 2015 WL 5174031 at *16 (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)).

The plaintiff bears the burden of demonstrating that "the protected conduct was a substantial or motivating factor" in the decision to take adverse action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  A court may consider a number of factors when determining whether a causal connection exists between a plaintiff's protected

activity and the adverse action taken, including: "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." *Klein v. Fischer*, 2015 WL 5174031 at *16 (internal citations omitted). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002). However, if a defendant demonstrates that he would have taken the action in the absence of the protected conduct, he may be entitled to summary judgment "[r]egardless of the presence of retaliatory motive." *Roseboro v. Gillespie*, 791 F. Supp. 353, 370 (S.D.N.Y. 2011).

In order to prevail on a claim of retaliation against Defendant Feliz, Plaintiff must first demonstrate that he engaged in protected speech or conduct. *Holland v. Goord*, 758 F. 3d at 225. The underlying protected conduct that Plaintiff asserts as a basis is not entirely clear from his submissions. Plaintiff stated in his deposition that Defendant Feliz tried to retaliate against him because he "didn't know the rules of his own job." Pl.'s Dep. at p. 55. The record also contains evidence that on another occasion, Plaintiff accused Defendant Feliz of retaliation due to "jealousy" because "all the girls in the building want [Plaintiff] and because he is better looking than [Defendant]." Feliz Decl. Exh. A. This was also asserted by Plaintiff during his deposition.

> And then I tell him in a – I said, listen, you've got a personal problem with me, you keep calling me to this room, and take the little badge off your neck and we handle this man to man because you continue this and continue this, and let's handle

> this man to man. Let's get it on, man to man, because you're not going to stop. And I told him that, and I told the – and there was a senior T.A. female in the hallway with him, and I'm telling him – I'm like, why do you keep doing this? I mean, why do you keep bothering me, man? Let's get it on, man to man, and end this, the vendetta you got against me, like, you know, I'm not telling him I look better than you, or cuter than you, or making him feel real small, like this is why you're bothering me, all your female staff is stalking me, and they're not stalking you? I mean, what's the problem?

Pl.'s Dep. at p. 39.

Neither allegation establishes protected conduct upon which to base a claim of retaliation. However, Plaintiff also appeared to allege at another point in his deposition that Feliz took adverse action against him because of Plaintiff's threat to file a lawsuit.

> Well, what happened that day was the Defendant – the Defendant, Mr. Felice [sic], had committed acts of retaliation because I stated to him that I was –that I was going to write him up because the rule book states that I may or may not have a roommate as of choice. And he continued to force roommates on me.

Pl.'s Dep. at p. 17; p. 25 ("Stop making false accusations because I'm going to present this in a class-action 83 if you keep continuing to accuse me of things I didn't do – for nothing I didn't do.")

Plaintiff's statements regarding filing a lawsuit or a complaint against Defendant Feliz or the facility could, perhaps, establish conduct protected against retaliation, requiring the Court to proceed further. Plaintiff appears to allege several possible retaliatory actions taken by Defendant, and each will be addressed in turn.

First, Plaintiff alleges that Defendant Feliz ordered the administration of medication against his will as retaliation. *See* Pl.'s Am. Compl. at p. 7. As noted above, the record establishes that Defendant Feliz was not personally involved in the decision to order or administer medication to Plaintiff, and therefore this basis cannot establish an adverse action taken by Defendant to sustain a claim for retaliation. Feliz Decl. at ¶¶ 5, 14; Pl. Ex. B; Keator Decl. at ¶ 5 & Ex. A; Zielinski Decl. at ¶ 12.

Furthermore, the record demonstrates that Plaintiff was given medication for his own safety and that of other patients after he allegedly assaulted a patient and became aggressive towards staff. Keator Decl. at ¶ 11; Feliz Decl. at ¶ 12. Therefore, even if an adverse action were sufficiently stated, Plaintiff has failed to establish a causal connection between any protected activity and the allegedly adverse action taken as a result.

Next, Plaintiff alleges that Defendant Feliz ordered that he be given a roommate as retaliation. Pl.'s Am. Compl. at pp. 4-5. Plaintiff, however, is required to set forth more than mere allegations of retaliatory behavior in order to defeat a motion for summary judgment. He has not set forth any evidence at all showing that Defendant Feliz was even responsible for determining whether Plaintiff was given a roommate, or that such a decision was the result of a retaliatory motive. In contrast, evidence set forth by Defendant Feliz demonstrates that Plaintiff was receiving a roommate because he was the only patient on the unit at that time without a roommate. Feliz Decl. ¶ 7. Plaintiff's Treatment Plan Progress Notes also indicate that this decision was the responsibility of the overall treatment team and was not solely within Defendant Feliz's discretion. Feliz

Decl., Exh. A; Pl.'s Opp. p. 14, Exh. B. Plaintiff has not established that his "protected conduct was a substantial or motivating factor" in the decision to take adverse action by assigning him a roommate. *Graham v. Henderson*, 89 F.3d at 79.

Finally, Plaintiff alleges that Defendant Feliz ordered him to the side room as retaliation. However, the purpose of the side room was not to punish patients, but rather to have confidential conversations with patients and to deescalate situations when patients became agitated. Feliz Decl. at ¶ 24. The record also contains ample evidence that Plaintiff was sent to the side room on some occasions not as punishment but rather because of his behavioral issues which presented a danger to himself and to other patients, and on other occasions in order to have confidential conversations with staff. Keator Decl. at ¶ 9; Feliz Decl. at ¶¶ 7, 10, 18, 23, 24.

Plaintiff alleges that the side room is "not for talking, it is specifically for unruly patients and violent patients." Pl.'s Opp. at pp. 6-7. However, this conclusory allegation in no way establishes that the purpose of being sent to the side room was for punishment, rather than for the safety and privacy of everyone involved. In contrast to Plaintiff's mere allegations, Defendant has set forth admissible evidence demonstrating that Plaintiff was brought to the side room for these non-retaliatory purposes. *See* Keator Decl. at ¶ 9; Feliz Decl. at ¶¶ 7, 10, 18, 23, 24. Plaintiff cannot establish a causal connection between any protected conduct and being sent to the side room as retaliation.

To that end, being "sent to the side room" cannot plausibly establish an adverse action for purposes of a First Amendment retaliation claim. An adverse action "consists of

conduct that 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Myers v. Saxton*, 2021 WL 149062 at *7 (N.D.N.Y. Jan. 15, 2021) (quoting *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). "Vague and isolated incidents of intimidation or threats . . . do not rise to the level of adverse action." *Myers v. Saxton*, 2021 WL 149062 at *7 (collecting cases). Plaintiff has set forth no evidence of any conduct by Defendant Feliz that would deter a similarly situated individual from exercising his or her constitutional rights.

The Court therefore finds that Plaintiff has failed to demonstrate any triable question of fact as to his retaliation claim and as a result, recommends the granting of summary judgment to Defendant on this claim as well.

### C. State Law Claims

In addition to his federal claims, Plaintiff has alleged state law claims of negligence and intentional infliction of emotional distress against Defendant Feliz. A court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the [Court] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Factors to be considered when determining whether to continue to maintain supplemental jurisdiction are the "familiar factors of judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018) (*citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). When "all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward

declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. at 350.

Plaintiff's claims for negligence and intentional infliction of emotional distress arise out of the same series of events giving rise to his federal claims. Given the recommendation that summary judgment be granted on the merits of those claims, the Court finds that the continued exercise of jurisdiction over the state law claims is improper. *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 31) be **GRANTED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**[3] **WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*,

---

[3] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: January 27, 2022
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge