**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**JASON ET CATO,**

                               **Plaintiff,**

   vs.                                                   9:20-CV-176
                                                             (MAD/DJS)

**GABRIEL FELIZ,** *T.A. Staff*,

                               **Defendant.**
_____

**APPEARANCES:**                                        **OF COUNSEL:**

JASON ET CATO
21-B-0271
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**                **LAUREN ROSE EVERSLEY, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## ORDER

      Plaintiff commenced this action on February 22, 2020, alleging that his constitutional rights were violated while he was a patient at the Central New York Psychiatric Center ("CNYPC"). *See* Dkt. No. 1. On October 26, 2020, Plaintiff filed an amended complaint. *See* Dkt. No. 21. Following initial review, the only remaining claims in this action are (1) a Fourteenth Amendment claim for unwanted medical treatment; (2) a First Amendment retaliation claim; and (3) state law claims, all asserted against Defendant Feliz. *See* Dkt. Nos. 20 & 21.

      On May 19, 2021, Defendant moved for summary judgment on Plaintiff's remaining

claims. In a Report-Recommendation and Order dated January 27, 2022, Magistrate Judge Stewart recommended that the Court grant Defendant's motion and dismiss this action in its entirety. *See* Dkt. No. 45. Specifically, as to Plaintiff's claim that he was administered unwanted medication, Magistrate Judge Stewart found that Defendant Feliz, who is a Secured Hospital Treatment Aide at CNYPC, was not personally involved in the decision to administer medication to Plaintiff, or in the actual administration of that medication. *See id.* at 9-10. As to the First Amendment retaliation claim, Magistrate Judge Stewart first found that several of the allegations cannot support this claim because the speech or conduct at issue was protected by the First Amendment. *See id.* at 11-12. As to the speech or conduct at issue that was subject to First Amendment protection, Magistrate Judge Stewart found both that the undisputed facts established that Defendant did not take adverse action against Plaintiff and that even if adverse action had been taken, there was no causal connection between the adverse action and the protected speech. *See id.* at 13-15. Finally, Magistrate Judge Stewart recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims of negligence and intentional infliction of emotional distress. *See id.* at 15-16.

In objections filed on February 9, 2022, Plaintiff contends that Magistrate Judge Stewart failed to consider video evidence submitted that clearly shows Defendant ordering and administering medication to Plaintiff against his will. *See* Dkt. No. 46 at 1-2. Plaintiff further contends that there was no valid reason for medication to be administered against his will since he was not a danger to himself or others, as required by New York law. *See id.* at 1-10. Finally, Plaintiff contends that he has established that Defendant has subjected him to repeated forms of harassment, which were allegedly ignored by Magistrate Judge Stewart. *See id.*

When a party files specific objections to a magistrate judge's report-recommendation, the

district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

    A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

    In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York.*, 322

3

F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252 (emphasis and alterations in original)). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment." *Kotler v. Fischer*, No. 9:09-CV-01443, 2012 WL 929823, *12 (N.D.N.Y. Mar. 19, 2012) (citations omitted). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d

Cir. 1991)).

In the present matter, the Court finds that Magistrate Judge Stewart correctly determined that the Court should grant Defendant's motion for summary judgment. As to Plaintiff's Fourteenth Amendment unwanted medical treatment claim, the undisputed facts establish that on January 4, 2020, a "red dot alarm" was activated at CNYPC due to an injury to Plaintiff's roommate, that Plaintiff was suspected to have caused. *See* Dkt. No. 31-2 at ¶¶ 7-17. During a red dot alarm, all available doctors and staff report to the ward where the alarm was activated. *See id.* at ¶ 12. Defendant and approximately four other staff members were with Plaintiff outside of a side room, where Plaintiff became increasingly agitated. *See id.* at ¶ 13. Defendant and the other staff members attempted to diffuse the situation using standard redirection techniques, but Plaintiff remained agitated. *See id.* at ¶ 14. After personally observing Plaintiff's behavior, Dr. Maghsoudalou directed that medication be given to Plaintiff to calm him down. *See id.* at ¶ 15. When Plaintiff refused to voluntarily take the medication, Dr. Maghsoudalou ordered that Plaintiff be medicated with immediate (STAT) injections of the prescribed medications. *See id.* at ¶ 17. Although Defendant was present during this incident and assisted in securing Plaintiff, in his role as a Secured Hospital Treatment Aide at CNYPC Defendant does not have the authority to order or administer medication to patients. *See* Dkt. No. 31-2 at ¶ 6; Dkt. No. 32 at ¶ 5; Dkt. No. 32-1 at ¶ 5; Dkt. No. 32-2 at ¶ 12. At his deposition, Plaintiff admits that a doctor was the individual who administered the injections, as seen on the video he references in his objections, and that Defendant and other staff simply "stood around the restraint bed" and watched. *See* Dkt. No. 31-3 at 30-31. As such, the undisputed facts establish that, since Defendant did not have the authority to order or administer medication to Plaintiff, he was not personally involved in the alleged forced medication. *See Munger v. Cahill*, No. 9:16-cv-728, 2018 WL 4635709, *13-14

5

(N.D.N.Y. July 23, 2018) (holding that the defendant registered nurse was not personally involved in the administration of medication to the plaintiff because she did not have the authority to override the medication decision of the treating physician); *see also Cuoco v. Moritsugo*, 222 F.3d 99, 111 (2d Cir. 2000) (holding that summary judgment was appropriate where the non-medical professionals could not be held liable for failure to intervene in the medical decisions of a treating physician); *Smith v. Wood*, No. 9:05-cv-1439, 2008 WL 788573, *9 (N.D.N.Y. Mar. 20, 2008) (granting the defendants motion for summary judgment as to the plaintiff's medical indifference claims against a licensed clinical social worker and a psychologist because neither had any authority to override the prescribing physician's decisions).

As to the retaliation claim, Magistrate Judge Stewart correctly determined that Defendant is entitled to summary judgment. Initially, the Court notes that it is not entirely clear from Plaintiff's submissions what he claims is the underlying protected conduct. At his deposition, Plaintiff stated that Defendant tried to retaliate against him because he "didn't know the rules of his own job." Dkt. No. 31-3 at 55. Additionally, Plaintiff stated that Defendant was jealous of him because "all the girls in the building want [Plaintiff] and because he is better looking than [Defendant]." Dkt. No. 32 at 7; *see also* Dkt. No. 31-3 at 39. As Magistrate Judge Stewart correctly determined, neither of these allegations establishes protected conduct upon which to base a claim of First Amendment retaliation. *See Garrido v. Coughlin*, 716 F. Supp. 98, 101 (S.D.N.Y. 1989) (holding that the inmate plaintiff was not engaged in protected conduct when he had a "verbal confrontation" with a correctional officer); *see also Williams v. Smith*, No. 9:11-cv-601, 2015 WL 1179339, *10 (N.D.N.Y. Mar. 13, 2015) (same).

During his deposition, Plaintiff alleges that Defendant took adverse action against him because of Plaintiff's threat to file a complaint or lawsuit against him. *See* Dkt. No. 31-3 at 39.

6

This allegation could be considered protected conduct and Plaintiff appears to allege several possible retaliatory actions taken by Defendant. First, as discussed, Defendant was not personally involved in the administration of medication against Plaintiff's will and, therefore, it cannot serve as an adverse action in support of his retaliation claim. Moreover, the undisputed facts make clear that medication was administered to Plaintiff because it was determined that he was a danger to himself and others after he assaulted another patient. *See* Dkt. No. 32-1 at ¶ 11; Dkt. No. 32 at ¶ 12. Therefore, even if this could constitute an adverse action, Plaintiff has failed to establish a causal connection between any protected activity and the allegedly adverse action taken.

Plaintiff further contends that Defendant ordered that Plaintiff be given a roommate as retaliation. Again, the undisputed facts demonstrate that Plaintiff was receiving a roommate because he was the only patient on the unit at that time without a roommate. *See* Dkt. No. 32 at ¶ 7. Additionally, the undisputed facts establish that the decision to assign Plaintiff a roommate was the responsibility of Plaintiff's entire treatment team, not Defendant. *See* Dkt. No. 32 at 7; Dkt. No. 40 at 14. As such, Plaintiff has not and cannot establish that his "protected conduct was a substantial or motivating factor" in the decision to assign Plaintiff a roommate. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Additionally, assigning Plaintiff a roommate, when he was the only patient in his unit with a roommate, is not conduct that would constitute an "adverse action" for purposes of his claim. *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).

Plaintiff also alleges that Defendant ordered him to the "side room" in retaliation for his protected conduct. The undisputed facts clearly establish, however, that the purpose of the side room is to have confidential conversations with patients and to deescalate situations when patients become agitated. The undisputed facts demonstrate that Plaintiff was sent to the side room on

7

occasion because his behavioral issues presented a danger to himself and others. As such, Plaintiff has failed to establish a causal connection between being sent to the side room and any protected activity. Moreover, this conduct would not deter an individual of ordinary firmness from exercising his or her constitutional rights. Accordingly, the Court finds that Magistrate Judge Stewart correctly determined that the Court should grant Defendant's motion for summary judgment as to Plaintiff's First Amendment retaliation claim.

Finally, the Court finds that Magistrate Judge Stewart correctly determined that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Since all federal claims have been dismissed before trial, the balance of factors the Court is required to consider weigh decidedly against exercising supplemental jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Stewart's January 27, 2022 Report-Recommendation (Dkt. No. 45) and Order is **ADOPTED in its entirety** for the reasons set forth therein; and the Court further

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 31) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 24, 2022
Albany, New York

Mae A. D'Agostino
U.S. District Judge